# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORRENE EADS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PRUDENTIAL INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | Case No. 1:13-cv-01209-TWP-MJD |
| ERIC K. SHINSEKI, | ) | |
| DEPARTMENT OF VETERANS AFFAIRS, | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY PENDING MOTIONS

This matter is before the Court on Defendant Prudential Insurance Company of America's ("Prudential") Motion to Dismiss Counts II and III (Filing No. 17) and Defendants Secretary of the Department of Veterans Affairs Eric K. Shineski's ("Secretary Shineski"), Department of Veterans Affairs' ("VA"), and United States of America's ("the Government") (collectively, "the Government Defendants") Motion to Dismiss (Filing No. 37). Plaintiff Lorrene Eads' ("Ms. Eads") filed this action alleging defendants failed to deliver benefits from her late husbands' insurance policy under the Servicemembers Group Life Insurance Program ("SGLI"). For the reasons set forth below, Defendants' motions are **GRANTED**.

## I. BACKGROUND

The following facts are taken from Plaintiff Lorrene Eads' ("Ms. Eads") complaint and are considered true for the purposes of the motions to dismiss. Ms. Eads' husband, A. Ronson Eads ("Mr. Eads"), enlisted in the United States Army in 2006 and was deployed to Afghanistan. He returned to the United States in 2010 and suffered from and was diagnosed with Post

1

Traumatic Stress Disorder ("PTSD").  He underwent documented treatment at Southside Regional Hospital in Richmond Virginia and at Kenner Army Health Clinic in Fort Lee, Virginia.  Following an honorable discharge from the Army on January 19, 2011, Mr. Eads continued to suffer from PTSD, which was manifested by anxiety, depression, outbursts of anger and alcohol abuse. He eventually found work in Crawfordsville, Indiana on an assembly line and began working on April 11, 2011.  At home and at work Mr. Eads was irritable and angry.  After 6 months on the job, Mr. Eads left without notice to his employer and went to his parents' home in Bloomington, Indiana on October 25, 2011.

Mr. Eads found work in Bloomington a few weeks later, but worked for only five days. On November 21, 2011, Mr. Eads drove to his favorite hiking spot at Lake Monroe.  In the middle of the night, he called Ms. Eads and told her he was drunk and intended to kill himself. Ms. Eads begged her husband not to take his life, and Mr. Eads agreed not to.  However, the next morning Mr. Eads failed to answer his cell phone.  Ms. Eads, who was pregnant with their second child, drove from Crawfordsville to Lake Monroe, where she found and parked next to Mr. Eads' truck.  She then found Mr. Eads sitting in a chair, in the rain, slumped over.  He did not respond to Ms. Eads' shouts.  There was a gun on the ground next to Mr. Eads, and tragically, he had taken his own life.  Mr. Eads left a suicide note, in which he expressly cited his struggle with PTSD.

The VA investigated Mr. Eads' death and in a Ratings Decision on May 8, 2012, concluded that Ms. Eads and her children were entitled to dependency and indemnity compensation and education assistance under 38 U.S.C. §§ 35 and 1310.  The VA based its conclusion on Mr. Eads disability as a result of PTSD.  It further concluded that Mr. Eads died as a result of a service-connected disability.

As a member of the Armed Forces, Mr. Eads was covered by the Servicemembers' Group Life Insurance ("SGLI") program. The program is codified under the Servicemembers' Group Life Insurance Act ("SGLIA"). *See* 38 U.S.C. §§ 1965–67. SGLI is administered by the VA and provides low-cost term insurance protection to service members. Active servicemembers are automatically granted coverage, which ordinarily terminates 120 days after separation or release from service. 38 U.S.C. § 1968(a)(1)(A). If a servicemember is totally disabled at the time of release, SGLI coverage terminates on the earlier of the date on which he or she ceases to be totally disabled or two years after the date of separation. 38 U.S.C. § 1968(a)(1)(A)(i)–(ii). "Total disability" is defined by the Secretary of the VA in 38 C.F.R. § 9.1(j) as "any impairment of mind or body which continuously renders it impossible for the insured to follow any substantially gainful occupation." In addition, servicemembers may elect to extend SGLI coverage after separation or release by converting coverage to the Veterans' Group Life Insurance program ("VGLI"). Mr. Eads did not convert his SGLI coverage into VGLI coverage, and because 120 days had passed between his date of separation and death, his beneficiary—Ms. Eads—is not automatically entitled to benefits.

Since the inception of SGLI, Prudential has been the sole insurer and administrator of SGLI policies. Holders of SGLI policies submit claims to Prudential. The terms of the group policy and applicable regulations require the VA to be recordkeeper and provide Prudential with information reasonably bearing on administration of the policy, including the status of each person with respect to the policy. Prudential is required to provide coverage based on upon the VA's records, and certain VA determinations are conclusive. *See* 38 C.F.R. §§ 9.7(a)(1), (a)(5). This includes whether a servicemember has a total disability.

Ms. Eads, as the sole beneficiary of Mr. Eads' SGLI policy, filed a claim for death benefits with Prudential on August 28, 2012, for the policy's term limit of $400,000.00.  She acknowledged that 120 days had passed since Mr. Eads' separation from the Army, but contended that he was totally disabled and thus coverage should be granted.  Prudential requested additional information from Ms. Eads on September 17, 2012, and again on January 17, 2013.  Despite indicating to Ms. Eads' counsel on December 27, 2012, that her claim would be approved, Prudential denied Ms. Eads' claim on May 1, 2013.  Prudential stated that although Mr. Eads may have had medical conditions resulting from his service, those conditions did not prevent substantially gainful occupation as evidenced by Mr. Eads' 6-month employment and therefore, he did not qualify for total disability extended coverage.

Ms. Eads filed her Complaint for money damages in this Court on July 30, 2013, alleging three claims against Prudential, Secretary Shineski, the VA, and the Government: a violation of 38 U.S.C. § 1970, federal common law breach of contract, and federal common law breach of implied covenant of good faith and fair dealing.  Secretary Shineski, the VA, and the Government seek dismissal of all three claims on sovereign immunity grounds.  Prudential seeks dismissal of Counts II and III, the federal common law claims, on grounds that such claims are impermissible in this context.

## II. LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted).  However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted). To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

### III. DISCUSSION

The Government Defendants seek dismissal grounded in sovereign immunity, which is a jurisdictional question. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The Court will address this motion first before turning to Prudential's motion.

### A. Existence of Sovereign Immunity

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Id.* Failure to identify both a statute that confers subject matter jurisdiction on the district court and a federal law that waives the Government's sovereign immunity "mandates the dismissal of the plaintiff's claim." *Macklin v. United States*, 300 F.3d 814, 819 (7th Cir. 2002). In other words, a plaintiff must establish that a statute authorizes suit and that Congress has conferred federal jurisdiction over such suits. *See id.* "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Waivers are to be strictly construed in favor of the Government. *Id.* "To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.*

Ms. Eads relies on 38 U.S.C. § 1975 as the basis of jurisdiction over the Government Defendants. The statute section reads, "[t]he district courts of the United States shall have

original jurisdiction of any civil action or claim against the United States founded upon this subchapter." The Fifth Circuit has described the Government's role with SGLI and the resulting effect on consent as follows:

> The deep involvement of the government in this group insurance program, its control over the program, the payment of its administrative costs, the escheat to it of unclaimed proceeds, and other factors described above, particularly the manner in which the program is keyed to specialized needs and requirements of military service, cause the government to be much more than a routine employer making available to its employees the benefits of group coverage. Nevertheless, we conclude that the governmental involvement, even of this depth and scope, does not necessarily carry with it plenary consent to be sued in a non-tort action for damages at the behest of any claimant who has been denied group insurance proceeds.

*Shannon v. United States*, 417 F.2d 256, 261 (5th Cir. 1969). Further, the Ninth and Fifth Circuits have recognized that the Government's consent to be sued under 38 U.S.C. § 1975 "extends only to actions alleging breach of an explicit or implicit duty under the SGLI subchapter." *Denton v. United States*, 638 F.2d 1218, 1220 (9th Cir. 1981). *See Shannon*, 417 F.2d at 261 (quoting *Barnes v. United States*, 307 F.2d 655 (D.C. Cir. 1962) for the proposition that "[t]he United States has consented to be sued . . . to the extent that any such civil action or claim can be shown to involve some right created by [the analogous Federal Employees Group Life Insurance Act] and a breach by the Government of some duty with respect thereto"). District courts have accepted this as the standard for determining whether claims may lie against the Government or must be brought against the insurer. *See, e.g.*, *McNabb v. U.S. Dep't of the Army*, No. 12-cv-6038-RBL, 2013 WL 2099724, at *2 (W.D. Wash. May 14, 2013); *Laporte v. United States*, No. 09-CV-7247 (KMK), 2011 WL 3678872, at *5 n.3 (S.D.N.Y. Aug. 19, 2011) *Williams v. United States*, No. 08-5081, 2009 WL 799974, at *2 (E.D. La. Mar. 19, 2009).

Ms. Eads contends that the VA has "undertaken actions that neither the SGLIA nor the related regulations require it to take," (Filing No. 42 at 5), and has waived its sovereign

immunity. Specifically, Ms. Eads alleges that the VA has in other cases made determinations that servicemembers were totally disabled and then ordered Prudential to pay SGLI benefits. In her Complaint, Ms. Eads alleges facts about non-parties Marine Corps Major Jeff Hackett ("Major Hackett") and Army Specialist Chad Whiting ("Specialist Whiting"). (Filing No. 1 at 12–14). Beneficiaries of both Major Hackett and Specialist Whiting filed for death benefits under SGLI policies with Prudential. Major Hackett suffered from PTSD after separation from the Marines in February 2008. He held a job between June 2008 and October 2009. He took his own life in June 2010. Prudential and the VA initially denied his beneficiary's claim for death benefits because Major Hackett had been employed, and the story received coverage in the press. The VA then reversed itself and determined Major Hackett had been totally disabled. It ordered Prudential to pay the beneficiary's claim. Similarly, Specialist Whiting suffered from various mental health conditions and killed himself and his wife more than 120 days after his separation from the Army. The beneficiary filed a claim for death benefits in January 2011 and a federal lawsuit in mid-2012. Shortly after the lawsuit was filed, Prudential granted the claim citing guidance received from the VA. Ms. Eads relies upon these similar claims proceedings to suggest that the VA has undertaken a duty to make coverage determinations that would bring her lawsuit against the Government Defendants under the Court's subject matter jurisdiction.

Despite the examples asserted, the Court finds Ms. Eads has still failed to meet her burden of establishing a waiver of sovereign immunity. Because this is a suit for monetary damages, the Court must apply greater scrutiny. Ms. Eads has not established that the SGLIA authorizes suits for the type of breach she alleges[1]. There is no explicit duty of the VA to make coverage determinations of totally disabled servicemembers, and two examples of the VA doing

---

[1] Ms. Eads sought leave to amend her Complaint to include a "class of one" equal protection claim, however the motion was denied on the bases that the motion was unduly delayed and futility of the proposed claim. (Filing no. 88).

so is insufficient to establish an implicit duty grounded in the SGLIA. While Ms. Eads is correct that the Court is to consider the Complaint's factual allegations as true and draw reasonable inferences in her favor, the Court is also to strictly construe waivers of sovereign immunity in favor of the Government. Therefore, the Court finds that it does not have subject matter jurisdiction over Ms. Eads' claims against Secretary Shineski, the VA, or the Government. Her claims against the Government Defendants must be dismissed and their motion is **GRANTED**.

**B. Federal Common Law Claims**

Prudential contends that Counts II and III must be dismissed, because no independent right of action under federal common law exists under these circumstances.[2] "[F]ederal common law is subject to the paramount authority of Congress." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 777 (7th Cir. 2011). "The test for whether congressional legislation excludes the declaration of federal common law is simply whether the statute speaks directly to the question at issue." *Am. Elec. Power Co. v. Connecticut*, 131 S. Ct. 2527, 2537 (2011) (internal quotation marks omitted). Here, the relevant statute is the SGLIA, which is codified at 38 U.S.C. § 1965 *et seq*. It is a "pervasive and detailed" statutory scheme, *Ridgeway*, 454 U.S. at 53, complete with comprehensive regulations. One particular regulation, 38 C.F.R. § 9.13, allows for "[a]ctions at law or in equity to recover on the policy" against the insurer. It is not disputed that this regulation establishes the authority for Ms. Eads' Count I claim for recovery under the SGLIA. The Court, however, must determine if this provision and the larger statutory scheme displace the federal common law claims asserted in Counts II and III.

Prudential contends that although federal common law has been relied upon in SGLI cases when interpretation or administration of SGLI cannot be answered by the statute, there are

---

[2] The Court notes that Ms. Eads' claims cannot arise under state common law under the doctrine of preemption. *See Ridgeway v. Ridgeway*, 454 U.S. 46, 57 (1981) ("We conclude, therefore, that the controlling provisions of the SGLIA prevail over and displace inconsistent state law.").

not additional federal common law rights to enforce SGLI policies.  Ms. Eads contends that the enforcement provision of SGLIA is neither comprehensive nor detailed and that 38 C.F.R. § 9.13 indicates a broad intention to provide alternate claims for legal or equitable relief.  Ms. Eads compares this context to the ERISA context, in which the enforcement provision offers "appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  In ERISA cases, courts have utilized federal common law claims when "there was no ERISA statutory claim to satisfy the same ends."  *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Ill. Range, Inc.*, 71 F. Supp. 2d 864, 868–69 (N.D. Ill. 1999) (collecting cases).  Ms. Eads further argues that federal common law claims arising from an SGLI policy passed the motion to dismiss stage in *Lucey v. Prudential Life Ins. Co. of Am.*, 783 F. Supp. 2d 207, 211–15 (D. Mass. 2011).  However, displacement of federal common law was not raised in *Lucey* and the case is not binding on this Court.

It is well-established that federal common law theories can fill in gaps when interpreting and implementing a statutory scheme.  *See, e.g.*, *Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475–76 (7th Cir. 1999) (in SGLI case, applying federal common law concept that "no person shall be permitted to benefit from the consequences of his or her wrongdoing" when determining proper beneficiary).  In contrast, Plaintiff has not presented and the Court has not found any SGLI cases in which independent breach of contract or good faith claims were brought outside the scope of the SGLIA enforcement provision.  Consequentially, the Court finds that there is no authority for allowing Ms. Eads' Counts II and III to proceed.  Importantly, her claims in Counts II and III are duplicative of Count I, and this is not a case in which there is no statutory claim to satisfy the same ends sought in Counts II and III.  Therefore, the federal common law claims must be dismissed and Prudential's motion is **GRANTED.**

## IV.  CONCLUSION

Accordingly, the Government Defendants' Motion to Dismiss (Filing No. 37) is **GRANTED** for lack of subject matter jurisdiction and all claims against the Government Defendants are **DISMISSED**.  Additionally, Prudential's Motion to Dismiss (Filing No. 17) is **GRANTED**.  Counts II and III against Prudential are **DISMISSED**.  Count I remains against Prudential and will proceed.

SO ORDERED.

Date: 07/22/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Katelyn  O'Reilly
CONNELL FOLEY LLP
koreilly@connellfoley.com

Liza  Walsh
CONNELL FOLEY LLP
lwalsh@connellfoley.com

Tricia B. O'Reilly
CONNELLY FOLEY LLP
toreilly@connellfoley.com

Gregory W. Pottorff
ICE MILLER LLP
gregory.pottorff@icemiller.com

Katherine A. Winchester
ICE MILLER LLP
katherine.winchester@icemiller.com

William Joseph Spalding
SPALDING LAW LLC
will@spalding-law.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE
jill.julian@usdoj.gov